# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**MARTIN FRANKLIN BLANE**                                                                     **PLAINTIFF**

**V.**                      **CIVIL ACTION NO. 1:16CV228 LRA**

**NANCY BERRYHILL, ACTING**
**COMMISSIONER OF SOCIAL SECURITY[1]**                **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Martin Franklin Blane appeals the final decision denying his applications for disabled widower's benefits (DWB) and supplemental security income (SSI). The Commissioner requests an order pursuant to 42 U.S.C. § 405(g), affirming the final decision of the Administrative Law Judge. Having carefully considered the hearing transcript, the medical records in evidence, and all the applicable law, the Court finds that the decision should be affirmed.

On November 5, 2012, Blane filed applications for DWB and SSI alleging a disability onset date of March 31, 2007, due to depression and problems with his back, knee, ankle and heart. He was 48 years old on his alleged onset date, with three years of college and work experience in family-owned businesses as a retail store manager and electronic sales and service person. Following agency denials of his applications, an Administrative Law Judge ("ALJ") rendered an unfavorable decision finding that he had

---

[1] Nancy Berryhill is substituted for her predecessor, Carolyn W. Colvin, as Acting Commissioner of Social Security. Fed. R. Civ. P. 25(d).

not established a disability within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review. He now appeals that decision.

At step one of the five-step sequential evaluation,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. At steps two and three, the ALJ found that although Plaintiff's osteoarthritis of the knees, diabetes mellitus, hearing loss, obesity, major depressive disorder, and generalized anxiety disorder were severe, they did not meet or medically equal any listing. At step four, the ALJ found that Plaintiff had the residual functional capacity to perform medium work with the following exceptions (as paraphrased by the Court):

> He cannot frequently balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; he should avoid concentrated exposure to noise (noise intensity level of no more than three as per SCO); avoid concentrated exposure to hazards such as dangerous moving machinery and unprotected heights; he is limited to simple, routine, repetitive tasks of unskilled work; he can maintain attention and concentration for two hours; occasionally interact with supervisors; work in proximity but not in coordination with co-workers; he can have no interaction with the general public and is limited to low stress work (no fast-paced production requirements, simple work-related decisions, and few or no changes in work setting.[3]

---

[2] Under C.F.R. § 404.1520, the steps of the sequential evaluation are: (1) Is plaintiff engaged in substantial gainful activity? (2) Does plaintiff have a severe impairment? (3) Does plaintiff's impairment(s) (or combination thereof) meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? (4) Can plaintiff return to prior relevant work? (5) Is there any work in the national economy that plaintiff can perform? *See also McQueen v. Apfel*, 168 F.3d 152,154 (5th Cir. 1999).

[3] ECF No. 9, p. 24.

Based on vocational expert testimony, the ALJ concluded that given Plaintiff's age, education, work experience, and residual functional capacity, he could perform work as a food service worker, store laborer, and floor waxer.

## Standard of Review

Judicial review in social security appeals is limited to two basic inquiries: "(1) whether there is substantial evidence in the record to support the [ALJ's] decision; and (2) whether the decision comports with relevant legal standards." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Carrier v. Sullivan*, 944 F.2d 243, 245 (5th Cir. 1991)). Evidence is substantial if it is "relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 285, 295 (5th Cir. 1992)). This Court may not re-weigh the evidence, try the case *de novo*, or substitute its judgment for that of the ALJ, even if it finds evidence that preponderates against the ALJ's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

## Discussion

Plaintiff contends that this case should be reversed or alternatively remanded for two reasons: (1) the ALJ erred in failing to develop the record concerning Plaintiff's hearing loss; and, (2) the ALJ's residual functional capacity is not supported by substantial evidence.

**I.**

Plaintiff alleges that the ALJ failed in his affirmative duty to develop the record concerning his hearing loss. Although he did not allege hearing loss in his disability applications, Plaintiff cites his daughter's third-party function report identifying hearing loss among his conditions, and his own testimony estimating a 50 percent loss at the administrative hearing. In addition, Plaintiff notes that the ALJ acknowledged that there was no auditory testing despite citing medical records showing hearing loss. All of this was sufficient to warrant a consultative hearing evaluation, Plaintiff argues, and the ALJ's failure to do so was error.[4]

The duty to obtain a consultative examination is triggered only if "the record establishes that such an examination is *necessary* to enable the [ALJ] to make the disability decision." *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (quotation omitted). The decision is discretionary and must be balanced against the fact that the claimant bears the burden of proof through step four of the evaluation process. *Brock*, 84 F.3d at 728; *Jones v. Bowen*, 829 F.2d at 527 (5th Cir. 1987). It "does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record." *Hardman*, 820 F.3d at 147 (quoting *Leggett*, 67 F.3d at 566). The claimant must present "evidence sufficient to raise a suspicion concerning a non-exertional impairment." *Clary v. Barnhart*, 214 F. App'x. 479, 481 (5th Cir. 2007) (quoting *Brock*, 84 F.3d at 728). "Isolated comments in the record are insufficient,

---

[4] ECF No. 9, pp. 28, 57-87, 207-214, 330-344.

without further support, to raise a suspicion of non-exertional impairment." *Id.* (citation omitted).

In the instant case, the ALJ clearly found sufficient evidence based on the claimant's hearing testimony and other evidence to conclude that hearing loss was a severe impairment at step two. However, the Court can find no evidence of record indicating that Plaintiff has ever complained, or that any physician has found evidence, of hearing loss. Medical records referenced by the ALJ, and in turn, cited by Plaintiff on appeal, appear to be a singular medical report showing that Plaintiff was negative for hearing loss on examination, not positive. Neither the consultative physical or mental examinations ordered by the ALJ revealed evidence of hearing loss. On the contrary, Plaintiff's hearing acuity was "good to the whispered voice." Given the lack of any medical finding confirming hearing loss, the failure to mention hearing loss as an impairment in his applications for benefits, and the failure to seek treatment for same, Plaintiff fails to show that an examination was necessary to determine his disability status. *Hardman*, 820 F.3d at 148. Further, notwithstanding the lack of objective medical evidence, the ALJ's residual functional capacity assessment incorporates noise restrictions and limits his interaction with others. Plaintiff fails to establish that his hearing loss imposed limitations on his ability to work beyond these.[5]

---

[5] ECF No. 9, pp. 270-73, 341.

**II.**

Next, Plaintiff alleges the ALJ's residual functional capacity determination is not supported by substantial evidence because it fails to give sufficient weight to his subjective complaints and other favorable evidence. At the administrative hearing, Plaintiff testified that constant knee pain makes it difficult to stand or walk, and diabetic neuropathy causes his feet to stay numb. He also has back pain from a herniated disc and trouble with pins in his right foot from prior ankle injuries. Depression and panic attacks also make it difficult for him to the leave the house, and impair his ability to concentrate longer than 30 minutes. While he acknowledges that doctors have recommended that he lose weight, and that medications do help, the side effects cause drowsiness and digestive problems.[6]

It is well-established law that the sole responsibility for determining a claimant's residual functional capacity rests with the ALJ, and there is substantial evidence to support his residual functional capacity determination in this case. 20 C.F.R. § 404.1546 (c). The ALJ's assessment reflects a narrative discussion of Plaintiff's ability to do sustained work-related activities in an ordinary work setting on a regular continuing basis in compliance with social security rulings and regulations. *See* SSR 96-8p. 1996 WL 374184, at *1, 3. 20 C.F.R. § 404.1546(c) (2009). Based on the evidence as a whole, the ALJ concluded that Plaintiff had the residual functional capacity to perform medium unskilled work subject to the physical and mental limitations of his residual functional

---
[6] ECF No. 9, pp. 57-87.

capacity. In making this determination, the ALJ found that Plaintiff's allegations and complaints were not entirely credible. When a claimant's statements concerning the intensity, persistence or limiting effects of symptoms are not supported by objective evidence, the ALJ has the discretion to make a finding on their credibility. *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015); *Foster v. Astrue*, 277 F. App'x. 462 (5th Cir. 2008). The ALJ explained as follows:

> Credibility is important when considering an individual's complaints. In this case, the claimant's allegations of debilitating symptoms and limitations are not fully credible. First, the objective medical evidence, as discussed above, does not establish conditions to produce the very serious symptoms and limitations testified to by the claimant at the hearing. Although the claimant had a herniated disc at L5-S1, there is no radiographic evidence of such in the file. In addition, although he alleged bad knees with daily pain at 8 out of 10, the x-rays of his knees showed only mild changes. Dr. Coulter noted only generalized osteoarthritis and indicated the claimant could perform work at a medium level. Second, in his application documents, the claimant stated he stopped working because the company he was working for "got bought out and then went bankrupt," not because of his impairments. Third, the claimant reported some anxiety and agoraphobia in March 2013. However, in October 2014, the mental status examination was normal with just a note of depression worsening over the years and anxiety when leaving home. Fourth, viewing all of the evidence together, the undersigned finds the claimant's subjective allegations of serious and debilitating symptoms and limitations cannot reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record.[7]

Plaintiff does not dispute the ALJ's credibility analysis, nor does he deny that the ALJ is solely responsible for determining a claimant's residual functional capacity. He simply maintains that it strains logic to believe that someone with his history of ankle fracture,

---

[7] ECF No. 9, p. 29 (internal record citations omitted).

7

uncontrolled diabetes, arthritis in both knees, and obesity could perform the lifting and standing requirements of medium work.

In support, Plaintiff cites treatment records generated 5 weeks after injuring his left ankle in July 2012, when he had a limp and rated his pain as 8 out of 10. Examination findings from his consultative examination nearly a year later indicate that his prior ankle injuries had healed. The examiner noted that Plaintiff had a normal gait with "no assistive device used or needed." He also had a normal range of motion, full muscle strength, and normal sensation. Subsequent treatment records do not document any ongoing treatment or permanent ankle injury, but mirror the findings of the consulting examiner. Plaintiff's history of ankle fractures also failed to meet the severity threshold at step two.[8]

With regard to Plaintiff's knee osteoarthritis, the ALJ weighed his allegations of constant knee pain against x-ray evidence showing no more than mild to moderate arthritic changes and small joint effusion in the knees. Plaintiff's argument that his subjective complaints were not given enough weight is unavailing. The ALJ was not required to credit Plaintiff's subjective complaints of constant and severe pain over the objective medical evidence. *Cornett v. Astrue*, 261 F. App'x. 644, 650 (5th Cir. 2008) (per curiam). The record also fails to substantiate Plaintiff's assertion that his diabetes was not well-controlled. His treating sources repeatedly indicated that his diabetes was controlled without complications. The only apparent outlier is a nurse practitioner's

---

[8] ECF No. 9, pp. 270-73, 301.

notation in May 2014. Moreover, while observing that no medical source had specifically attributed limitations to Plaintiff's obesity, the ALJ considered its cumulative effect with other impairments on his ability to work. *See* SSR 02-1P. Lastly, the ALJ assigned great weight to the examiner's opinion that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently, stand and walk for up to six hours, sit without limitation, and perform postural activities frequently. Such evidence substantially supports the ALJ's conclusion that Plaintiff could perform the requirements of medium work subject to the physical limitations of his residual functional capacity.[9]

Substantial evidence also supports the ALJ's finding that Plaintiff has the residual functional capacity to perform low-stress work if limited to simple, routine, repetitive tasks; maintaining attention and concentration for two hours; and, occasional interaction with supervisors in proximity, but not in coordination with, coworkers or the general public. Plaintiff's contends that this finding overlooks his subjective complaints of anxiety and depression, and favorable evidence generated by mental health examiners during an outpatient visit on October 30, 2014. Examiners noted that his Global Assessment of Functioning ("GAF") scores indicated moderate functional limitations, and recommended that he undergo one year of counseling. But such evidence is insufficient to overcome the overwhelming weight of the evidence supporting the ALJ's findings.[10]

---

[9] ECF No. 9, pp. 263, 271-73, 331.
[10] ECF No. 9, pp. 307-22.

A disability claimant must show that he is so functionally impaired by his mental impairment that he is precluded from engaging in substantial gainful activity. The ALJ observed that Plaintiff sought outpatient treatment for panic attacks and depression in October 2014, but noted that the examination findings were generally normal. Although the ALJ did not discuss the diagnoses, one-year counseling recommendation, or the GAF scores assigned, an ALJ is not required to discuss every piece of evidence in reaching a disability finding. *Audler v. Astrue,* 501 F.3d 446 (5th Cir. 2007). Further, a GAF score is not "dispositive of anything in and of itself, but rather only significant to the extent that it elucidates an individual's underlying mental issues." *Oliver v. Comm'r of Soc. Sec.*, 415 F.App'x 681, 684 (6th Cir. 2011). It is the clinician's subjective evaluation, and one of many factors considered in evaluating the consistency of the medical evidence. *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007). Based on the evidence as a whole, the ALJ concluded that the weight of the evidence showed Plaintiff had mild restriction in his daily activities, moderate difficulties in social functioning, and moderate difficulties with regard to maintaining concentration, persistence, and pace. Plaintiff does not explain how this finding fails to adequately account for his GAF scores indicating moderate functional limitations. And, while he correctly points out that counselors recommended that he undergo counseling for one year, the Court finds no treatment records showing that he followed through with the recommendation. A claimant's failure to seek treatment is a relevant factor to consider in determining the severity of an alleged impairment and may be used in conjunction with the medical reports to discount

complaints of disabling pain or other limitations. *Doss v. Barnhart*, 137 F. App'x 689, 690 (5th Cir. 2005); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991).

In addition to this evidence, the ALJ considered the examination findings of the consulting psychologist who opined that Plaintiff is capable of performing routine, repetitive tasks. But he rejected the examiner's opinion that Plaintiff could "interact with others in a limited situation" as too vague. The ALJ found Plaintiff's mental impairments would allow him to perform low-stress unskilled work, but only if he did not interact with the general public or work in coordination with coworkers, and only occasionally interacted with his supervisors. This finding is consistent with the state agency medical expert's opinion that Plaintiff appeared "capable of completing a workweek without excessive interference from psychological based factors." And, although the ALJ stated he assigned it little weight, it is also consistent with the expert's opinion that Plaintiff had moderate limitations in social functioning and maintaining attention and concentration.[11]

Notwithstanding, Plaintiff argues that the ALJ's residual functional capacity finding is inconsistent with the hypothetical posed to the vocational expert at the hearing. Specifically, he notes that while the hypothetical posed to the vocational expert at the administrative hearing limited him to maintaining attention and concentration to "two-hour blocks of time," the residual functional capacity finding as set forth in the ALJ's decision, limits him to maintaining attention and concentration for two hours. The implication, according to Plaintiff, is that the ALJ found that he was unable to maintain

---

[11] ECF No. 9, p. 30, 88-107, 258-61.

attention and concentration for six hours of the workday. The issue therefore is whether the ALJ intended to find that Plaintiff could only concentrate for two hours over the course of a single workday, or for two hours at a time. Plaintiff contends that it was the former and that any reliance on the expert's response was misplaced.

The Court finds no reversible error. Nothing in the ALJ's analysis indicates that his failure to include the two-hour block qualifier in his written assessment meant that he intended to find Plaintiff more limited than the evidence suggests. No examining or treating source found that Plaintiff's mental impairments would preclude him from concentrating on simple, repetitive tasks for more than two hours of the workday, and Plaintiff does not cite any evidence to this effect. Further, courts have found that an ALJ's omission of the two-hour block qualifier is inconsequential. It is "simply a term of art, or shorthand reference, to a basic presupposition inherent in the concentration, persistence, and pace analysis." *Baker v. Comm'r Soc. Sec. Admin.,* No. 1:10–CV–00167–JAW, 2011 WL 1298694, at *4 (D. Me. Mar. 31, 2011). It does not equate to "a medical finding which is required to be "explained away by the Judge if it is not incorporated into an RFC finding." *Id* at *6. *See also MacDougall v. Astrue,* No. 2:10-CV-400-GZS, 2011 WL 4566268, at *8 (D. Me. Sept. 29, 2011); *McGrath v. Astrue*, No. 10-CV-455-JL, 2012 WL 976026, at *6 (D.N.H., Mar. 22, 2012); *Dagraffenreid v. Colvin,* No. 15-CV-10185-ADB, 2016 WL 5109509, at * 7 (D. Mass., Sept. 20, 2016). The two-hour block limitation merely references the "approximately 2–hour segments between arrival and first break, lunch, second break, and departure." *See Social Security Administration's Program Operation Manual*, § DI 25020.010(B)(2)(a).

**Conclusion**

For the reasons stated, the Court's review of the record compels a finding that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision.

IT IS THEREFORE ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment is hereby denied and Plaintiff's appeal is dismissed with prejudice. A Final Judgment in favor of the Commissioner shall be entered.

SO ORDERED on September 29, 2017.

s/ Linda R. Anderson  
UNITED STATES MAGISTRATE JUDGE